# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| RICHARD HOCKSTEIN, *derivatively and on behalf of Medtronic, Inc.*, | Civil No.  14-4020 (JRT/HB) |
| Plaintiff, | |
| v. | |
| ARTHUR D. COLLINS, JR., WILLIAM A. HAWKINS, OMAR ISHRAK, GARY ELLIS, RICHARD H. ANDERSON, SCOTT C. DONNELLY, VICTOR J. DZAU, SHIRLEY ANN JACKSON, MICHAEL O. LEAVITT, JAMES T. LENEHAN, DENISE M. O'LEARY, KENDALL J. POWELL, ROBERT C. POZEN, PREETHA REDDY, MICHAEL R. BONSIGNORE, WILLIAM R. BRODY, DAVID L. CALHOUN, JACK-PIERRE ROSSO, JACK W. SCHULER, GORDON M. SPRENGER, and MEDTRONIC, INC., | **MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO DISMISS** |
| Defendants, | |
| v. | |
| SPECIAL LITIGATION COMMITTEE, | |
| Movant. | |

Daniel E. Gustafson, David A. Goodwin, and Daniel C. Hedlund, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN  55402; and William Scott Holleman, **JOHNSON & WEAVER, LLP**, 99 Madison Avenue, Fifth Floor, New York, NY  10016, for plaintiff.

Michelle S. Grant and Kristin K. Zinsmaster, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for the individual defendants.

Maren F. Grier and Patrick S. Williams, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN  55402, for nominal defendant Medtronic, Inc.

Andrew S. Birrell, Sara H. Daggett, and Steve W. Gaskins, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South Seventh Street, Suite 3000, Minneapolis, MN 55402, for movant Special Litigation Committee.

Plaintiff Richard Hockstein ("Hockstein") brings this shareholder derivative suit on behalf of nominal party Medtronic, Inc. ("Medtronic") against current and former directors and officers of Medtronic ("individual defendants"). Hockstein alleges that the defendants illegally marketed off-label uses for one of their medical devices. In response to a demand letter from Hockstein, Medtronic established a Special Litigation Committee ("SLC"), pursuant to Minn. Stat. § 302A.241, subd. 1, "to consider [the] legal rights or remedies of the corporation and whether those rights or remedies should be pursued." The SLC concluded that it would not be in Medtronic's best interests to litigate and brings this motion to dismiss. The individual defendants and Medtronic have filed similar motions. In an almost identical case, this Court has previously ruled that the SLC possessed a disinterested independence and that the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith. The Court finds no reason to depart from its previous ruling and will consequently grant the individual defendants', Medtronic's, and the SLC's motions to dismiss.

## BACKGROUND

## I. HOCKSTEIN'S DEMAND AND SPECIAL LITIGATION COMMITTEE

Medtronic is a Minnesota corporation that manufactures medical devices. (Verified Shareholder Derivative Compl. ("Compl.") ¶¶ 45, 48, Sept. 26, 2014, Docket No. 1.) The INFUSE Bone Graft ("Infuse") is a popular device manufactured by

Medtronic. (*Id.* ¶ 3.) Hockstein, a Pennsylvania citizen and Medtronic shareholder since January 2005, (*id.* ¶ 23), brought this derivative action against certain Medtronic directors and officers, (*id.* ¶ 1). Hockstein alleged breaches of fiduciary duty, unjust enrichment, and corporate waste with regard to the Infuse product. (*Id.*) Specifically, Hockstein alleged that defendants caused and permitted Medtronic to promote "off-label" uses of Infuse in violation of state and federal laws, concealed known risks and adverse side effects associated with Infuse, awarded undeserved and excess compensation to certain Medtronic executives, and misrepresented and omitted material facts to the investing public in violation of federal securities laws. (*Id.*)

On April 24, 2012, Hockstein demanded that the Board of Directors of Medtronic (the "Board") investigate and address the alleged misconduct and, if warranted, commence litigation against the individual defendants. (*Id.* ¶ 195.) After verifying that Hockstein was a shareholder, the Board formed an SLC on August 23, 2012, pursuant to Minn. Stat. § 302A.241, subd. 1, consisting of committee chair John Matheson and committee members Judge George McGunnigle and former Utah Governor Michael Leavitt. (*Id.* ¶ 200; Aff. of John H. Matheson ("Matheson Aff.") ¶¶ 1, 3, Nov. 25, 2014, Docket No. 18; *id.*, Ex. A. (Board Resolutions) at 1.)

Michael Leavitt was the only SLC member who was on the Board, and he is now a named defendant. (Compl. ¶ 35.) Leavitt was the only then-current Board member who was not named in the initial demand letter. (Matheson Aff. ¶ 3.) After his appointment, Leavitt resigned from the SLC in December 2012. (Compl. ¶ 35.) Leavitt left the SLC because he had served as the Secretary of the U.S. Department of Health and Human

Services from 2005 to 2009.   (Matheson Aff. ¶ 4.)   Since the Food and Drug Administration ("FDA") is an agency of that department, and since the FDA is responsible for approving and monitoring medical devices like Infuse, Leavitt departed because "it might appear that he was not disinterested."   (*Id.*)   After Leavitt's departure, Matheson, a University of Minnesota Law School professor, and Judge McGunnigle, a former Hennepin County District Court Judge, remained as the only members of the SLC while the SLC investigated the allegations.   (*Id.* ¶¶ 3-4, 7.)   The SLC retained an independent counsel, an accountant, and a loss causation analyst and economist; conducted an eighteen-month investigation including sixty interviews; and delivered its report to Medtronic on May 30, 2014.   (*Id.* ¶¶ 14-19, 26, 34.)   The report concluded that it was not in Medtronic's best interests to pursue litigation on the claims raised in demand letters from Hockstein and others, and that the SLC would seek dismissal with prejudice of the pending complaints.   (Matheson Aff., Ex. B (Report of the Special Litigation Committee ("SLC Report")) at 73.)

## II.   HOCKSTEIN'S COMPLAINT

On September 26, 2014, Hockstein filed his complaint with the Court.   (Compl.) Hockstein named twenty individual defendants in his complaint, including Medtronic's current Board Chairman and Chief Executive Officer ("CEO"), the current Chief Financial Officer ("CFO"), Medtronic's former CEO, and other current and former Board members.   (*Id.* ¶¶ 24-43.)   Additionally, Hockstein named Medtronic as the nominal defendant.   (*Id.* ¶ 45.)   Hockstein makes several claims against all defendants: breach of

fiduciary duty in Count I, (*id.* ¶¶ 223-30); unjust enrichment in Count II, (*id.* ¶¶ 231-34); and corporate waste in Count III, (*id.* ¶¶ 235-38.).

Medtronic's Infuse device, which "is used to help grow bone in certain procedures," was approved by the FDA in 2002 only for limited purposes.  (*Id.* ¶ 3.) **Doctors** may prescribe off-label uses of Infuse, but it is illegal for Medtronic – the **producer** – to promote off-label uses.  (*Id.* ¶¶ 3-4.)  This illegal conduct led to several lawsuits against Medtronic.  (*Id.* ¶ 5.)

In 2006, based on allegations of illegal marketing of its products, Medtronic settled with the U.S. Department of Justice ("DOJ") for $40 million and agreed to implement regulatory compliance reforms described in a Corporate Integrity Agreement ("CIA").  (*Id.* ¶ 5.)  Hockstein alleges that the off-label promotions continued despite the CIA and purported reforms.  (*Id.* ¶ 6.)  The U.S. Senate Finance Committee later investigated Medtronic, concluding that the company had paid physician consultants to promote off-label uses and colluded with physicians on publications discussing Infuse. Specifically, the Senate Finance Committee issued a report that "found that Medtronic was involved in drafting, editing, and shaping the content of medical journal articles without disclosing this role, and paid hundreds of millions of dollars to physician authors of Medtronic-sponsored studies."  (*Id.* ¶ 7.)

On July 1, 2008, the FDA issued a public health notification, warning healthcare providers who used Infuse and other bone-growth products of "serious complications that had occurred from the off-label use of these products in the cervical spine."  (*Id.* ¶ 124.) On November 18, 2008, Medtronic reported its fiscal 2009 second quarter results

showing that spinal product sales had declined $30 million to $829 million, due to slowing Infuse sales.  (*Id.* ¶ 129.)  Over time, Medtronic faced direct lawsuits on Infuse-related charges and numerous media outlets reported on Medtronic's improper payments to physician consultants.  (*Id.* ¶¶ 130-40.)  According to Hockstein, the individual defendants breached their fiduciary duties by falsely touting Infuse in public filings, press releases, and investor calls, all while hiding Infuse's adverse effects and the massive payments Medtronic was making to physician consultants to drive up sales of Infuse.  (*Id.* ¶ 9, 11, 12-14, 141-66, 226.)  Hockstein also attacks the defendants for what he claims are unjustified and wasteful stock repurchases and unjustifiably lucrative termination/separation payments.  (*Id.* ¶¶ 12-14, 178-87.)

## III.    MOTIONS TO DISMISS

The individual defendants, the SLC, and Medtronic filed motions to dismiss pursuant to Fed. R. Civ. P. 23.1(c).  (SLC Mot. for Approval and Dismissal, Nov. 25, 2014, Docket No. 14; Mot. to Dismiss by Nominal Def. Medtronic, Inc., Nov. 26, 2014, Docket No. 24; Individual Defs.' Mot. to Dismiss, Dec. 12, 2014, Docket No. 28.)  The defendants and the SLC argue that the SLC has demonstrated its disinterested independence and that the SLC had an adequate and appropriate investigative methodology, and that therefore, under Minnesota law, the Court must defer to the SLC's decision to not pursue these claims.

## IV.    THIS COURT'S EARLIER ORDER IN A RELATED CASE

This Court has recently ruled on the same issues presented in this case.  Charlotte Kokocinski, another Medtronic shareholder, recently brought a similar derivative action

against many of the same defendants. Medtronic's SLC – the same SLC involved in this case – considered Kokocinski's allegations, just as it did Hockstein's. (SLC Report at 8-9.) The SLC, the individual defendants, and Medtronic brought motions to dismiss in Kokocinski's case, just as they have in Hockstein's. And Kokocinski made arguments similar to those Hockstein has made in this case. On March 30, 2015, this Court granted the three *Kokocinski* motions to dismiss. (*Kokocinski v. Collins, et al.*, No. 12-633, Mem. Op. & Order Granting Motions to Dismiss ("*Kokocinski* Order"), Mar. 30, 2015, Docket No. 98.) In the *Kokocinski* Order, the Court concluded that the SLC "possessed a disinterested independence" and that "the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith." (*Id.* at 2.) Consequently, pursuant to Minnesota law, the Court granted the motions to dismiss. (*Id.* at 2, 38.)

## DISCUSSION

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 23.1 states pleading requirements for derivative complaints brought by shareholders to enforce the rights of the corporation. Rule 23.1(b) requires the plaintiff to state with particularity "(A) any effort by the plaintiff to obtain the desired action from the directors . . . ; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). If a plaintiff clears that hurdle, the substantive allegations are reviewed under the more lenient standards of Rule 8 and Rule 12(b)(6). *Rich v. Yu Kwai Chong*, 66 A.3d 963, 979 (Del. Ch. 2013). Rule 23.1(c)

also notes that a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23.1(c).

## II.    GOVERNING LAW

The Court discussed the governing law at length in the *Kokocinski* Order.  The Court found that an SLC has the power to terminate a derivative action to the extent permitted by the state of incorporation.  *Burks v. Lasker*, 441 U.S. 471, 486 (1979) (holding that federal courts should look to state law to determine the power of an SLC to terminate shareholder derivative litigation).   Because Medtronic is incorporated in Minnesota, (Compl. ¶ 45), Minnesota substantive law governs.  *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007) ("[F]ederal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law . . . .")

Minnesota law has established that a derivative lawsuit allows a shareholder to "bring suit against wrongdoers **on behalf** of the corporation."  *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn. 2003) (emphasis added). The "derivative action actually belongs to the corporation, but the shareholders are permitted to bring the action where the corporation has failed to take action for itself."  *Id.*

In Minnesota, the business judgment rule permits a corporation to appoint an SLC to determine whether the derivative action should proceed on the merits.  *Id.* at 882-83; Minn. Stat. § 302A.241, subd. 1.  The SLC must consist "of one or more independent directors or other independent persons to consider legal rights or remedies of the

corporation and whether those rights and remedies should be pursued."   Minn. Stat. § 302A.241, subd. 1.

In *In re UnitedHealth Group Shareholder Derivative Litigation*, the Minnesota Supreme Court considered what deference courts must afford an SLC under Minnesota law.  The court held that if an SLC shows that "(1) the members of the SLC possessed a disinterested independence and (2) the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith," the Court should defer to the SLC's decision to settle the derivative action under Minnesota's business judgment rule. 754 N.W.2d 544, 559 (Minn. 2008) (*UnitedHealth Grp.*).   In the *Kokocinski* Order, the Court found that even though the Minnesota Supreme Court's decision arose in the settlement context, the reasoning apples to dismissal because it was based on New York's *Auerbach* test which also arose in the dismissal context.   *See Auerbach v. Bennett*, 393 N.E.2d 994, 998 (N.Y. 1979); *see also In re UnitedHealth Grp. S'holder Derivative Litig.*, 591 F. Supp. 2d 1023, 1028 (D. Minn. 2008) (*UnitedHealth I*) ("While *Auerbach* involved a corporate motion to dismiss, rather than a proposal to settle a shareholder derivative litigation, the Minnesota Supreme Court made clear its rule applies with equal force in the context of settlement.").   Thus, the Court applies the Supreme Court's reasoning in *UnitedHealth Group* when assessing the SLC's decision in this case.

## III.   SLC STANDING

The parties dispute whether the SLC has standing to file a motion to dismiss in this case.  Hockstein argues that the SLC and its members lack standing as non-party bystanders and that the motion should be denied on that basis alone.  In the *Kokocinski*

Order, the Court analyzed essentially the same issue and found that the SLC could properly bring a motion to dismiss. (*Kokocinski* Order at 24-25); *see, e.g.*, *Wyilie ex rel. W Holding Co. v. Stripes*, 797 F. Supp. 2d 193, 194 (D.P.R. 2011) (considering a motion to dismiss from an SLC). The Court sees no reason to depart from its reasoning in *Kokocinski* and therefore concludes that the SLC's motion is also proper in this case.

As for the proper standard to apply, the Court will again rely on its earlier decision in *Kokocinski*. As in that case, the Court will consider the various dismissal motions here under Rule 23.1. (*Kokocinski* Order at 17-24); *Peller v. S. Co.*, 911 F.2d 1532, 1536 (11th Cir. 1990); *cf.* Andrew S. Hirsch, Comment, *Dismissing Derivative Actions in the Federal Courts for Failure to Allege Demand Futility: Choosing a Standard of Appellate Review—Abuse of Discretion or De Novo?*, 64 Emory L.J. 201, 228-29 (2014) (concluding that Rule 23.1 is "the best vehicle for making the demand futility dismissal" because a plaintiff in a shareholder derivative suit failed to allege properly that he made a demand on the board, or that such demand was futile, pursuant to Rule 23.1(b)(3)). The Court keeps in mind the summary judgment standard, however, when assessing a rule under Rule 23.1. (*Kokocinski* Order at 23-24); *Johnson v. Hui*, 811 F. Supp. 479, 484-85 (N.D. Cal. 1991) (noting that Rule 23.1 does not contain its own standard of review and "[f]ollowing the lead of" *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981), to look to Rule 56 for guidance).

## IV.   DISINTERESTED INDEPENDENCE

In determining whether directors are disinterested and independent, courts consider the totality of the circumstances, including the following factors:

(1) whether the members are defendants in the litigation; (2) whether the members are exposed to direct and substantial liability; (3) whether the "members are outside, non-management directors"; (4) whether the members were on the board when the alleged wrongdoing occurred; (5) whether the "members participated in the alleged wrongdoing"; (6) whether the members approved conduct involving the alleged wrongdoing; (7) whether the members or their affiliated firms "had business dealings with the corporation other than as directors"; (8) whether the members "had business or social relationships with one or more of the defendants"; (9) whether the members received advice from independent counsel or other independent advisors; (10) the severity of the alleged wrongdoing; and (11) the size of the committee.

*UnitedHealth Grp.*, 754 N.W.2d at 560 n.11 (quoting 2 Dennis J. Block et al., *The Business Judgment Rule: Fiduciary Duties of Corporate Directors* 1746–53 (5th ed. 1998)); *see also UnitedHealth I*, 591 F. Supp. 2d at 1028.

Hockstein contends that the SLC was not disinterested and independent, relying on an argument about the scope of the SLC's authority. Hockstein cites Medtronic's resolution authorizing the SLC, which states that the SLC "has complete power and authority to investigate the Derivative Claim[s] and analyze the legal rights and remedies of the Company and determine whether those rights or remedies should be pursued." (Matheson Aff., Ex. A at 2.) Hockstein argues the SLC was not independent because, he claims, it had no authority to take any action on his allegations.

In the *Kokocinski* Order, the Court considered this exact same argument and rejected it. (*Kokocinski* Order at 26-29.) Given that the authorizing resolution language tracks the language of Minnesota Statute § 302A.241, and given that the resolution creating this SLC is roughly the same as the resolution authorizing the SLC that the Court found disinterested and independent in *UnitedHealth I*, 591 F. Supp. 2d at 1028, the Court concludes again that "Medtronic gave its SLC sufficient authority to comply with

state law and make determinations warranting the respect of this Court." (*Kokocinski* Order at 28-29.)   Although Hockstein does not argue that the SLC's members are not disinterested and independent, the Court also reaffirms its conclusion in *Kokocinski* that "Matheson and McGunnigle were disinterested and independent in their role on the Medtronic SLC." (*Id.* at 33.)

## V.   INVESTIGATIVE PROCEDURES

In assessing the SLC's investigative procedures and methodology, courts look to the nature of the particular investigation and the totality of the circumstances, including the following factors:

> (1) the length and scope of the investigation; (2) the committee's use of independent counsel or experts; (3) the corporation's or the defendants' involvement, if any, in the investigation; and (4) the adequacy and reliability of the information supplied to the committee. Evidence that "the investigation has been so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted as to constitute a pretext or sham . . . would raise questions of good faith."

*UnitedHealth I*, 591 F. Supp. 2d at 1029 (citation omitted) (quoting *Auerbach*, 393 N.E.2d at 1003).

Hockstein argues that the SLC's eighteen-month investigation was inadequate, inappropriately drawn out, and not pursued in good faith.  Specifically, he argues that the SLC's investigation dragged on too long, which he believes evidences bad faith. *See Silverstein v. Larson*, No. 04-3450, 2005 WL 435241, at *3 (D. Minn. Feb. 25, 2005) ("A review of cases reveals that courts generally allow SLCs between six and ten months to investigate and report on pending derivative actions.").  Hockstein also argues that the SLC should be afforded no deference because no evidence exists that it examined his

specific claims or the basis for those claims.  *See Blohm v. Kelly*, 765 N.W.2d 147, 157 (Minn. Ct. App. 2009) (concluding no deference is due when an SLC fails to investigate and analyze a claim).

The Court rejects Hockstein's arguments and concludes that the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith.  First, the Court already reached the same conclusion in *Kokocinski* as to this SLC and sees no reason to depart from that determination.  In the *Kokocinski* Order, the Court looked at the totality of the circumstances based on the factors in *UnitedHealth I*. The Court found that the "scope and breadth of the investigation is demonstrated by the lengthy accounting the report provides of Medtronic's promotion of Infuse, both for on- and off-label uses, the history of the controversy, and the specific legal claims asserted by Kokocinski and others."  (*Kokocinski* Order at 34.)  The Court rejected an argument that the SLC Report was insufficient because it did not consider some of Kokocinski's specific allegations thoroughly enough.  (*Id.* at 35.)  The Court found that Minnesota law does not require an SLC Report to state all its factual findings.  (*Id.* at 35-36.)  Moreover, the Court noted that its decision in *Kokocinski* was in keeping with the decision in *UnitedHealth I*, where the Court analyzed the SLC's methodology – which tracks the SLC's methodology and approach in this case – and found the SLC's investigation to be adequate and in good faith.  *UnitedHealth I*, 591 F. Supp. 2d at 1029-30 (noting that the SLC had chosen not to recite specific factual findings and that "Minnesota's law does not compel the state and federal courts to inquire further into the SLC's findings").

Hockstein's specific arguments do not compel a different result than in *Kokocinski*. He cites no authority for the proposition that an eighteen-month investigation is so long that it constitutes bad faith. As for the argument that the SLC deserves no deference because it did not consider each of Hockstein's claims, the case he cites – *Blohm* – is inapplicable here. In that case, the SLC explicitly declined to consider one of the plaintiff's allegations, and the court ruled that it owed the SLC no deference as to that allegation. *Blohm*, 765 N.W.2d at 157. Here, the SLC has considered all of the allegations in Hockstein's demand letter, which match the allegations in this complaint, and still concluded litigation is not appropriate. (Matheson Aff. ¶¶ 35, 46; SLC Report at 6-7.) Given that the Court finds the SLC's methodology and investigative procedures to be robust and sound, Minnesota law does not permit the Court to delve any further into the SLC's report, or call into question its determination as to certain allegations. Under the standard articulated by the Minnesota Supreme Court in *UnitedHealth Group*, the Court concludes that the SLC's decision is entitled to deference and will consequently grant the SLC's and defendants' motions to dismiss.

## VI.   DISCOVERY REQUEST AND TIME TO REPLEAD

Hockstein also argues that he should be given additional limited discovery or time to replead. Hockstein asks for discovery into "all matters pertaining to the issues raised by the Movants' papers." (Pl.'s Omnibus Mem. in Opp'n to Mots. to Dismiss at 22, Jan. 5, 2015, Docket No. 35.) Hockstein relies in particular on the decision in a related case in state court, *Himmel v. Ellis*, No. 27-CV-12-9430 (Minn. Dist. Ct.), in which the court ordered limited discovery into the independence of the SLC's members in this case.

That decision found that the SLC had raised sufficient questions about the SLC's independence, noting Leavitt's departure from the SLC and McGunnigle's ownership of some Medtronic stock. (Aff. of Daniel C. Hedlund, Ex. 1 at 19, Jan. 5, 2015, Docket No. 36.) The Court rejects this argument. First, Hockstein has not called into question the SLC's independence on these grounds. Second, and more importantly, whether to order discovery on the SLC's independence and methodology is a decision subject to the Court's discretion. *Zapata*, 430 A.2d at 788 ("[T]he Court should inquire into the independence and good faith of the committee and the bases supporting its conclusions. Limited discovery **may** be ordered to facilitate such inquiries." (emphasis added)). Here, the Court finds that the record is sufficient to conclude that the SLC members were disinterested and independent, and used robust investigative procedures and methodologies. As a result, the Court will not allow additional discovery.

Hockstein also requests an opportunity to amend his complaint. Hockstein quotes Rule 15(a) of the Federal Rules of Civil Procedure, which states that the Court should "freely" grant leave to amend. However, Hockstein's request ignores the unique nature of a shareholder derivative action. Hockstein is asserting claims that belong to the corporation, not to him. *UnitedHealth I*, 591 F. Supp. 2d at 1028. Minnesota law gives great deference to SLCs and in this case the SLC has determined it will not pursue litigation as to allegations raised by Hockstein, Kokocinski, and others. Given the Court's decision in this case, and in *Kokocinski*, that the SLC is entitled to deference under Minnesota's business judgment rule, there is no reason for Hockstein to be able to

try to assert new derivative allegations on behalf of Medtronic. As a result, the Court will also deny Hockstein's request to allow him to replead.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The Special Litigation Committee's Motion to Dismiss [Docket No. 14] is **GRANTED**.

2.      The Individual Defendants' Motion to Dismiss [Docket No. 28] is **GRANTED**.

3.      Medtronic, Inc.'s Motion to Dismiss [Docket No. 24] is **GRANTED**.

4.      Hockstein's complaint [Docket No. 1] is **DISMISSED with prejudice**.

5.      Hockstein's requests to conduct limited discovery, and to be allowed to replead under Federal Rule of Civil Procedure 15(a), [Docket No. 35], are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  September 30, 2015                                      s/ John R. Tunheim
at Minneapolis, Minnesota.                                        JOHN R. TUNHEIM
                                                                              Chief Judge
                                                                 United States District Court